Our last case today, number 241863, Air-Con, Inc. v. Daikin Applied Latin America, LLC. Will Counsel for Appellant please introduce yourself on the record to begin? Yes. Good morning, Your Honors. My name is Rafael Santiago. I'm Counsel for Appellant, Air-Con, Inc. If he pleases the Court, I would like to reserve a couple minutes for rebuttal. Two minutes. Sir, the facts of this case are simple. We have a Puerto Rican company named Air-Con, Inc. They chose to literally revive a brand which in Puerto Rico was dead. Daikin went into the Puerto Rico market, failed, got out, and Air-Con revived it. Did you want to discuss our jurisdiction? We ask counsel to be prepared because it doesn't matter if we don't have jurisdiction. Sure. We received the order last, I believe, Thursday or Friday, basically saying that somehow jurisdiction here was manufactured based on dismissal without prejudice of the collection of money's action filed by Daikin. Frankly, I don't know how to answer that. I mean, it's not manufactured in some nefarious way. It's just a fact that if there's a counterclaim that is unresolved, then there is not a final judgment for which we can review. And so the question is, I think the law says that a dismissal of a counterclaim without prejudice, which means it can just be revived if there's unhappiness with the outcome of this appeal, then that precludes finality, and that's the problem. So manufacture doesn't have a sinister connotation. It's just facts that say, do we have a final judgment before us? That's the question. I think it is a fact that we do, your honor. What is the present status of the counterclaim? Has there been discussion between the parties about whether that the, I guess it's really Daikin's counterclaim, that they're giving it up, has there been discussion? I called yesterday, brother, counsel for Daikin and asked him. Because it is a fact that the invoices that were outstanding as a matter of ordinary course of business at the time that the counterclaim was filed. As of today's date, they're paid off. So in a sense- And I guess maybe this is a question for your friend on the other side, but has there been any change in your agreement about the status of the counterclaim, which at present is a counterclaim dismissed without prejudice? No, your honor, the invoices- Have you agreed to enter into a stipulation dismissing the counterclaim with prejudice? No. I mean, I would agree to it, but that wasn't the ruling made by the court. Brother, counsel requested, Daikin requested, the dismissal without prejudice. Because allegedly, at the time that the counterclaim was filed, a number of invoices were outstanding. Those invoices, I can tell you without hesitation for a fact, as of today, they've been paid off. The invoices that he was claiming, that Daikin was claiming collection, were invoices that were based on the distribution relationship, and it was a relationship, not a distribution agreement, as per the provisions of Act 75. Were paid in the ordinary commercial business. I mean, I guess my answer to your question is that the collection of monies was frivolous, your honor. The simple answer would have been yes, we've agreed to file a stipulation so we can move on to hear this on the merits. I'm sorry, your honor, I misunderstood your question. But the answer would be yes, I will be more than amenable to that. And it's not your counterclaim, so we need to know if you've extracted an agreement from the other side to do the same. I tried to do precisely that yesterday, but Daikin did not agree. They did not agree? Did not agree to present a joint motion pertaining to what you just said. We'll look forward to hearing from the defense on this. If we get to the merits, could I ask you to elaborate on why you think the district judge's treatment of the so-called mini-splits issue was incorrect? That's the one that does not seem to have been affected by the statute of limitations defense, right? And can you direct us to case law that would require a manufacturer to continue with all existing product lines, for example? I don't think there's case law that requires a manufacturer to continue indefinitely with the production and sale to a distributor of an equipment. If at some point it is not worth a while for the manufacturer to continue manufacturing whatever it is that he or she manufactures, I guess it is incumbent upon the manufacturer to make that decision. But what the Puerto Rico Supreme Court has held is that prior to withdrawing from the Puerto Rico market, prior from withdrawing from the Puerto Rico market, be it entirely or a material manufacturing line, that principle has the obligation to act in good faith. Let me give you an example. The day before- Have they defined good faith as minimally giving you notice and a wind down period? Have they been that specific? Let me put it to you this way. Dyking manufactures air conditioners. What would happen if you buy an air condition under the Dyking brand, it costs $3,000. And the very next day, me as a dealer receive a notice that that air condition is no longer to be provided, nor spare parts for the same. How I am going to be able to honor that warrant if I don't have the spare parts required in order to service- I'm going to stay on the factual argument, but I believe Judge Thompson's question and my question is about whether the, how specific the case law from the Puerto Rican courts supports that theory. There's a case called Medina Medina, which specifically states that prior to withdrawing from a market in Puerto Rico, the principal has the legal obligation to act in good faith- And that's withdrawal from the entire market, correct? That's withdrawal from the entire market, but I would respectfully submit, Your Honor, that it also applies when the line of business- We understand that's your position. What we're asking, what I at least am asking for, I thought my colleague was too, is indications from the Puerto Rican court that they agree with that principle. It is an unresolved issue. Thank you. One that the Supreme Court has not dealt with yet. Your Honor, as I was saying, the air con was the object of an attempted acquisition by Dyking in 2015, right? And the faults or impairments, which one might call light, in 2015 got aggravated by 2017. For example, Irma Maria, which was mentioned in a prior case argument. We received the notice of termination of the mini-splits only a couple of months after the island was hit by those hurricanes. As I'm sure you can imagine, claims, because these air conditioners sit in the tops of homes, in the tops of buildings, there were multiple claims, multiple, multiple claims for warranty for malfunctioning equipment. And we weren't able to get the spare parts. We didn't get prior notice. Simply one day they stopped servicing or fulfilling purchase orders from us, be it for equipment or be it for spare parts. And the worst part was that then we were forced, air con was forced to basically cannibalize its inventory to properly service. Basically take out spare parts for new equipment to honor warranties. And Your Honor, frankly, that is untenable from a business perspective, and I respectfully submit that the summary judgment issue has to be reversed. Thank you, Counsel. Will Attorney for Appalachia please come up and introduce yourself on the record? Good morning, Your Honors. Mauricio Munoz Luciano on behalf of Appalachia, Daikin Applied, Latin America. I think I should first address the issue on the final judgment rule. I actually believe there's a final judgment that is reviewable for this court, because there's no other pending claims before the district court. Okay, but that's wrong. So let's start from there. We have a case called Montillo that I think is, that suggests that a counterclaim with a dismissal without prejudice is not really a final judgment, because that can be revived by you at your choosing. And that means the judgment's not final. So I understand what you think, but I don't think that's correct. So is this counterclaim still existent in the form of it exists as being able to be re-brought without prejudice? Correct, it could, because we had two causes of action. It's not only a collection of money's action, we had a declaratory judgment for termination for just cause. Which the district court originally, with the opinion and order that granted our summary judgment, dismiss without prejudice our termination for just cause claim. Okay, are you willing to agree to the dismissal of both of those claims with prejudice? No, Your Honor. Sitting here right now, we do not agree to dismiss. Okay, your client wants to pursue those and pay for another round of briefing in the Court of Appeals. It doesn't mean that our client will pursue it, but I'm not in a position to dismiss him with prejudice sitting here today. Okay, well, I mean, there's nothing else we can ask you about that. So if you want to say anything else- What's the amount of the counterclaim? At the time, it was $170,000. By the time we filed summary judgment, it was about $70,000. The difference, the issue is that this was an ongoing business. Our counter, one of the causes of action for collection of monies was contingent on the termination for just cause. So if the court, if the district court had terminated the relationship, I guess the amounts due at the time would have been the amount claimed, which we did, which was $70,000 at the time. Okay, I'm not sure, for diversity jurisdiction purposes, I'm not sure how to value your claim for termination. Any ideas on that? That's something I at least would have to look up. Well, under Law 75 in Puerto Rico, you can terminate a distribution relationship with just cause. No, no, no, no, no. I understand that. The question is how to value that for purposes of satisfying the amount in controversy requirement for diversity jurisdiction if you were to go forward on only that claim as an independent claim in federal court. Correct. There's actually, we don't need to pursue it in federal court, one. Number two, we can pursue it in state court. And sitting here today, I do not have the amounts due between the parties. I can tell you the amounts that were claimed at the time of summary judgment. Thank you. Can I ask you, counsel, you had argued that part of the merits of this appeal were beyond the scope of the notice of appeal? Correct. And I had difficulty reconciling that argument with Appellate Rule 3, C, 4, and 6. Are you familiar with those provisions? Yes. Then how is anything here beyond the scope of the notice of appeal? We believe the discovery portions, the claims made, the discovery- There's an opinion by Judge Thompson for this court that says a final judgment merges all of the previous orders of the court, and they don't need to be specifically identified. That clarified the circuit's law, and it's not that long ago. Why is that not the controlling principle? The issue here is when summary judgment was filed, Air Con did not file a 56-D motion requesting that they needed to conduct additional discovery in order to oppose our motion for summary judgment. They actually opposed it, filed an extensive brief. Not only opposed our statement of contested facts, but they proposed about 40- That's an argument of waiver or forfeiture, not the scope of the appeal. Okay. Just for purposes of clarification. So, okay. If that's what you're arguing, I understand it, but I hadn't researched it that way, but since I researched it the way you argued it. Okay. Understood, Your Honor. And in terms of the merit, if I may, it's clear from the evidence on the record that all but one of the impairment claims in this case are time barred. Why don't you address the many split issue that everyone agrees is not time barred? Correct. That is an issue that Dyking discontinued a product. The issue that has not been brought to your attention is they substituted this product for a new one. So, there wasn't a withdrawal of the market. It wasn't a withdrawal. They just substituted an old product for a new one. What is a mini split? It's like an air conditioner you will have in your house that you put, I guess, on the- I have them all planted together in the back. Very good. So- I have a heat pump and all that. It's a different climate. In terms of your question, Judge Hamilton, when you asked where there was a case law on this issue, on the withdrawal of the market, there's no case law on this specific issue. What is clear is- What I guess I hear him saying, though, is Puerto Rico suffered an emergency that clearly would have damaged this product that you had been selling here for a while, so they had them and had responsibilities to service them, which, of course, after a catastrophic hurricane would mean they broke, so parts would be needed. And at the moment they needed you, you were high and dry. I think that's their argument. That's their argument here today. Their argument in court was this discontinuation of the product, per se. And in that case, we all are in agreement that there was no contractual provision that prohibited that. And the fact, as you all well know, Law 75 only protects contractually acquired rights. It doesn't protect- Why wouldn't good faith, the implicit good faith in a contract necessarily mean that you would give them sufficient notice and a wind-down period? That's for a total market withdrawal. Again, in this case, the fact shows that we substituted the product. It's not like we left Aircon without any product. You substituted one product for another. Yeah, there was a- But for people who had already purchased the old product that needed to be serviced after the hurricane, you didn't make your parts available. Is that correct? That's their claim. Well, I'm asking you, is that correct or not? That is not correct. Dykin kept servicing the clienteer, and the evidence showed that there was pretty much a substitution of the old product with a new one, and there was no issue. Their main complaint was that we didn't give them sufficient notice, that we discontinued the old mini-split and gave them a new mini-split. With that, their main other complaint was the price was too high for this new mini-split, so their margin will be less. That's really the complaints that were made at the district court level. And quite frankly, we all are in agreement that Law 75, again, protects only the contractually acquired rights. We're both in agreement that Dykin was not prohibited from doing that. They actually concede that on their brief. The Air Cons principle conceded that in deposition testimony under oath. So again, on their Law 75 principles, it's clearly not an impairment. Any other question in regards to that? Thank you. Thank you. Thank you, Counsel, Attorney Santiago Rosa. You have a two-minute rebuttal. Your Honor, I most respectfully submit that Dykin just rewrote Act 75. Specifically, in the definition incorporated in Section 278, as to what is a dealer's contract, and there's plenty of case law by the Puerto Rico Supreme Court establishing that there's no need for, that there's not only protection for contractually protected or acquired rights, but also for distribution relationships, regardless of whether, how the parties may call it, characterize it, or execute such relationship. That's a clear letter of the law. Saying otherwise is plainly wrong. Having said that, Your Honor, here, this case has been here before. And the specific instruction, Thompson was here. The specific instruction given to the district court was to ascertain the terms and conditions of a verbal agreement. So how can it be, what comes first, the eggs or the chicken? How can it be that the case be dismissed if, like he says, no contractual right was acquired, if the court has made no finding whatsoever? Or what were those rights? What were those terms and conditions? And that is Thompson only with a verbal agreement, that it strikes as logical, that can only be determined in an evidentiary hearing. And we have here a judge concluding, based on a verbal agreement, that my client has no acquired rights under the distribution relationship. How could that be? If you can't explain it, I guess you're far more intelligent than I am. And that is why we are here. Again, my client has rights under Act 75. Distribution relationships are protected regardless of the form, matter, or shape that the parties may call it. It is an undisputed fact that my client has been selling their product, maybe not as the exclusive distributor, but as the sole distributor for more than 20 years. And during that period, my client was acknowledged and recognized as the leader dealer in all of the dealership network of Dyckie. Correctly, Your Honor. Thank you, counsel. That concludes arguments in this case.